IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEREK R. PAGE, )
)
    Plaintiff, )
)
v. ) CIVIL ACTION NO. 09-0743- N
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )

ORDER

A hearing was conducted in this matter on October 27, 2010 before the undersigned Magistrate Judge. Present at the hearing were Wendy Pierce, Esq., counsel for the plaintiff Derek R. Page and Assistant United States Attorney Patricia Beyer representing the Commissioner. The parties have consented to the jurisdiction of the undersigned and this matter has been formally referred to the undersigned to conduct all proceedings. (Docs. 26, 29)

Procedural History

Plaintiff filed an application for Disability Insurance Benefits with the Social Security Administration on March 2, 2007, citing impairments which included severe back problems, specifically, stenosis and disc protrusion at the L4-5 and L5-S1 levels and a laminectomy defect at L5-S1 which causes pain and limits movement in his back and left leg. He alleged that the onset date for his disability was January 30, 2007. The application was denied at the initial level of review, and plaintiff filed a timely Request for Hearing.

The hearing was held before an Administrative Law Judge ("ALJ") on February 5, 2009. Plaintiff was represented by counsel; at counsel's request, the ALJ held the record open to allow submission of medical records from Dr. Paul Canale, an orthopedic surgeon who saw plaintiff on

February 20, 2009. Dr. Canale scheduled an MRI of the plaintiff's spine, which was conducted on March 2, 2009. Thereafter, Dr. Canale completed Physical Capacities Evaluation (PCE) and Clinical Assessment of Pain forms. Those forms and records were submitted to the Administration on March 24, 2009, and became part of the record upon which the ALJ made his determination.

The ALJ denied plaintiff's request for a supplemental hearing and rejected Dr. Canale's opinion. The ALJ found that plaintiff suffered the following severe impairments: lumbar disc syndrome and lumbar radiculopathy. However, he determined that plaintiff could perform the full range of light work and denied benefits on the basis that plaintiff could perform his past relevant work as a computer programmer.[1] Upon denial of review by the Appeals Council, the ALJ's decision became the final decision of the Commissioner. Plaintiff now appeals that decision to this court.

Facts

Plaintiff, Derek R. Page, was 37 years old at the time of the hearing, making him a "younger individual" for purposes of the disability analysis. He graduated from high school and completed an aviation training course. His past relevant work experience includes employment

---

[1] An ALJ uses a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform his past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, the claimant can "make an adjustment to other work" that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); 416.960(c) & 404.1560(c); see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir.2004). If the claimant proves that he cannot do his past relevant work at the fourth step, the burden shifts to the Commissioner to show, at the fifth step, that the claimant can make an adjustment to other work available in the economy. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir.1999).

as a sheet metal worker and a computer programmer.

Plaintiff suffered from chronic back problems which were exacerbated by a car wreck in 2005. In January 2007, plaintiff left his employment with Crestview Aerospace due to problems standing and lifting. On May 2, 2008, plaintiff underwent surgery on his back for sciatica, but continued to suffer pain in his back and left leg. Except for a consultive examination conducted shortly before the disability hearing, plaintiff had last seen a physician in June of 2008; though he was prescribed medication at that time, he stated that he was unable to afford it. For that reason, plaintiff uses nonprescription pain relievers. Plaintiff walks with a cane and reported that he takes care of his cats, drives a car, and is able to shop for groceries with assistance.

In July of 2006, prior to filing the instant claim, plaintiff saw Dr. Raymond Fletcher, an orthopedist, who stated that plaintiff suffered lumbar sacral pain, but x-rays taken at that time were negative. An MRI taken in August 2006 showed a large left disc herniation with nerve root compression at L5/S1 and dessication at L3/4. In January 2007, Dr. Fletcher reported that plaintiff could bend forward to 70-80 degrees and backward to 20 degrees, was negative for sciatic stretching and had normal strength and symmetric reflexes. However, plaintiff continued to have lumbar pain and he reported that physical therapy exacerbated the pain.

At the request of Dr. Robert White, a physician with Coastal Neurological Institute, plaintiff was examined by Dr. Patricia Boltz, a specialist in pain management, in September of 2006, for a series of lumbar epidural injections. Dr. Boltz stated that plaintiff's gait and station were somewhat abnormal, favoring his left leg, that he could heel/toe walk without difficulty, that he suffered palpable tenderness on the affected portions of the spine, had pain on forward

flexion to 30 degrees, on bending laterally, and on raising his left leg, and had radiculopathy.[2]

Plaintiff was then referred to pain management. In February, 2007, Dr. Arthur Holmes saw plaintiff for complaints of lower back pain radiating into his left leg. Dr. Holmes stated that despite ten epidural steroid injections, plaintiff continued to suffer intermittent worsening of pain radiating into his left leg, resulting in an inability to lift or to sit for any length of time, and requiring the use of crutches. He stated that plaintiff had been and would continue to be unable to work for several months.

In April 2007, Dr. White reported that plaintiff had been responding well to conservative treatment but had suffered a relapse. Prior to that reported relapse, Dr. White noted in January 2007 that plaintiff had a clear cut extrusion at L4-5 but had no radiculopathy, had forward flexion of 70 to 80 degrees with pain, normal extension to 20 degrees, and was generally doing well. Dr. White referred plaintiff to Dr. Ed Flott for a surgical consultation. Plaintiff eventually underwent a lower back laminectomy in 2008, but reported that the surgery did not alleviate his pain. Until the consultive examination, addressed below, plaintiff's last doctor's appointment was in June 2008.

Prior to the hearing, the ALJ ordered plaintiff to undergo a consultive examination by Dr. Andre Fontana, an orthopedist. Dr. Fontana examined plaintiff on November 21, 2008 and stated that x-rays of the lumbar spine showed significant disc space collapse. He diagnosed plaintiff as having lumbar disc syndrome and lumbar radiculopathy. In addition, Dr. Fontana noted that there might be some residual entrapment of the nerve root, and that plaintiff needed an MRI in order to make this determination. Dr. Fontana did not perform an MRI as part of the

---

[2] The reports of Dr. Fletcher concerning the MRI in August 2006 and the examination in January 2007, as well as the report by Dr. Boltz, are not mentioned in the ALJ's report but are included in the record.

4

consultive examination, but stated that one should be done. He nonetheless gave an opinion that plaintiff should not lift over 25 pounds, bend, stoop and twist only infrequently, and not climb or walk on unprotected heights. In addition, he completed a PCE form for plaintiff in which he concluded that plaintiff: (a) could sit, stand or walk no more than one hour at a time, but could sit for 8 hours, stand for 6 hours and walk for 4 hours in an eight hour day; (b) could lift or carry up to 5 pounds continuously, up to ten pounds frequently, up to 20 pounds occasionally, and never more than twenty pounds; (c) could use his hands and feet for repetitive action without limitation; (d) could bend, squat, crawl or climb occasionally, and reach frequently; and (e) should be totally restricted from engaging in activities on unprotected heights, moderately restricted from being around moving machinery, and mildly restricted from driving.

As noted above, at the request of plaintiff's attorney, the ALJ kept the record open after the hearing to allow plaintiff to obtain an MRI and a medical opinion based thereon. Plaintiff was seen by Dr. Paul Canale, an orthopedic surgeon, who examined plaintiff and ordered and reviewed an MRI of plaintiff's lumbar spine. According to Dr. Michael Heiser, the radiologist whose report plaintiff submitted to the Commissioner, the MRI showed the following:

1. Mild bilateral foraminal stenosis at L4-L5 related to a minimal posterior disc protrusion.
2. Left-sided moderately severe foraminal stenosis at L5-S1. Small broad-based posterior disc extrusion at L5-S1, covered by a bony spur. (Cannot completely exclude post surgical changes/scar tissue.)
3. Transitional lumbosacral vertebra.
4. There does appear to be a left-sided laminectomy defect at L5-S1.

Doc. 17 at 239. At oral argument, counsel for the Commissioner acknowledged that the MRI showed entrapment of the nerve root, though it was not mentioned by name in the report. Given Dr. Fontana's statement that an MRI was needed specifically to look for that condition, its presence appears to have been material.

Dr. Canale's notes indicate that he conducted the same sort of examination that Dr.

Fontana had performed: tested plaintiff's flexion and extension, observed his gait, had the plaintiff toe walk, conducted seated straight leg raises, checked his ability to flex his feet, and checked his reflexes. Dr. Canale also took x-rays, which showed "a transitional vertebra with bilateral batwing transverse processes that were sacralized. . .narrowing of the disk space from L5 transitional vertebra and there was no real disk space at the transitional S1 level [as well as] minor anterior lipping at several levels." Dr. Canale adopted the prior diagnosis of degenerative disc disease, but found it likely that the majority of plaintiff's symptoms were caused by the drastically narrowed disc space at L5/TR. In addition, Dr. Canale completed PCE and Pain forms, opining that plaintiff could sit, stand or walk a maximum of two hours at a time, with totals of four hours of sitting or walking and two hours of standing during an eight-hour day; that he could lift and carry up to five pounds but should never lift more than that; can use his hands for repetitive action, but could not use leg controls; could not bend, squat, crawl, or climb, but could reach without limitation; and that he should not engage in activities on unprotected heights or around moving machinery, and had moderate limitations on driving. Dr. Canale further opined that plaintiff suffered from pain which would be distracting to the adequate performance of daily activities or work; that his pain would be greatly increased by physical activity; and that plaintiff would have severe side effects from his medications.

At the administrative hearing, the ALJ asked the Vocational Expert (VE) one hypothetical question—whether, if the claimant were restricted to light work, he could do his past relevant work as a computer programmer. The VE stated that he could. Plaintiff's attorney then asked a hypothetical question: could an individual who had surgery for a large herniated disc, received follow-up care and still complains of constant pain from his back, radiating down his leg, and reports that the pain limits his ability to sit, stand and walk, that the individual has to

use a cane and can not lift more than five pounds, be able to perform any work in the national economy. The VE responded that an individual subject to the restrictions set out in counsel's hypothetical would be limited from a full range of sedentary work. No other questions were asked of the VE.

## Scope of Judicial Review

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. Washington v. Astrue, 558 F.Supp.2d 1287, 1296 (N.D.Ga. 2008); Fields v. Harris, 498 F.Supp. 478, 488 (N.D.Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. Lewis v. Callahan, 125 F.3d 1436, 1439-40 (11th Cir. 1997); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence" means more than a scintilla, but less than a preponderance. In other words, "substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. Richardson v. Perales, 402 U.S. 389 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into

account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995); Walker, 826 F.2d at 999. With this legal framework in mind, the court now turns its focus to claimant's assignments of error.

## Analysis

Plaintiff argues on appeal that the Commissioner erred: (1) in failing to accord appropriate weight to the opinion of Dr. Canale, and (2) in relying on the answer to an improper hypothetical question to the vocational expert.

The record offers two medical opinions concerning petitioner's residual functional capacity. Both were given by examining rather than treating physicians. The first issue raised by plaintiff comes down to whether the ALJ was substantially justified in believing Dr. Fontana's opinion over that of Dr. Canale, despite the fact that Dr. Fontana did not have the benefit of the results of the MRI that he indicated in his report was necessary. It is not clear from the record, or from the ALJ's analysis, that he was. Read reasonably, Dr. Fontana's opinions concerning plaintiff's residual functional capacity appear to be premised, in part, on the presumption that an MRI would not demonstrate the existence of significant nerve root entrapment and his opinion is made subject to the qualification that an MRI was needed specifically to look for that condition. The fact that an MRI thereafter demonstrated the existence of that condition can not reasonably be ignored in weighing the RFC opinions of these two examining physicians. Not only was Dr. Canale's opinion based on a more thorough

8

medical record, Dr. Fontana's own concern over the possible existence of nerve root entrapment must be considered—to some extent—to undermine his conclusions. The decision of the ALJ does not address these factors in making the choice to rely on Dr. Fontana's opinion while disregarding the opinion of Dr. Canale. As such, the court must find that the record is inadequate to demonstrate that the ALJ's decision was substantially justified.

Because the court finds that this case must be remanded to the Commissioner for further consideration, the court need not address plaintiff's second issue, concerning the hypothetical question posed to the vocational expert. The court notes, however, that the ALJ found that claimant suffered from physical limitations which might have been inconsistent with the full range of light work, but nonetheless asked the vocational expert whether a person who could perform the full range of light work could perform the duties of claimant's prior employment as a computer programmer. The ALJ's decision touches, only in passing, on whether these additional physical limitations would have affected claimant's ability to perform at the light exertional level; the sufficiency of the ALJ's implicit finding is not addressed herein. *See e.g.,* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.1999)("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Pendley v. Heckler, 767 F.2d 1561 (11th Cir.1985) (ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert reversible error where the ALJ relied on that expert's testimony in reaching a disability decision).

## Conclusion

For the foregoing reasons, it is hereby ORDERED that the instant case is REMANDED to the Commissioner for further proceedings consistent with this opinion.

DONE and ORDERED this the 22nd day of November, 2010.

/s/  Katherine P. Nelson  
UNITED STATES MAGISTRATE JUDGE